722 A.2d 213 (1998)
In the Interest of A.E., Appellee.
S.W.E., Natural Father.
Clinton County Children and Youth Services.
Appeal of M.E., Natural Mother, Appellant.
Superior Court of Pennsylvania.
Submitted September 24, 1998.
Filed December 21, 1998.
Stephen C. Smith, Lock Haven, for appellant.
Paul D. Welch, Jr., Lock Haven, for A.E., appellee.
Stuart Hall, Lock Haven, for S.W.E., participating party.
Michael Angelelli, Lock Haven, for Clinton County, CYS, participating party.
Before JOHNSON, HUDOCK and HESTER, JJ.
JOHNSON, J.
We are asked to consider the propriety of an order transferring custody from mother to father following an informal shelter care hearing under Section 6332 of the Juvenile Act, 42 Pa.C.S. §§ 6301-6365. We have previously held that dependency proceedings are not to be used as a means of transferring custody of a child from one parent to another. Here, the trial court made no dependency determination at the 72-hour hearing, nor did it expressly find that the mother had failed to provide proper parental care and control. Accordingly, we reverse the order that purported to transfer custody and we remand with directions that custody be returned to the mother.
On January 5, 1998, CYSS filed a Petition for Dependency / 72 Hour Shelter Care Hearing, alleging that Mother had left A.E., age two, and R.N.Y., age eleven days, both the children of Mother, with a friend on January 3, 1998, and supposedly went to the *214 state of New Jersey. The petition further alleged that Mother had indicated that she would return on January 4, 1998, but that as of the date of the filing of the petition, Mother had not returned and her whereabouts were unknown. The petition went on to allege that Mother had failed to keep two well-baby appointments for R.N.Y. after the date of his birth. On January 5, 1998, CYSS placed both children in foster care.
The next day, the Honorable Richard N. Saxton held an informal hearing pursuant to 42 Pa.C.S. § 6332(a). Both Mother and Father testified at that hearing. Father testified that he and Mother had married on November 11, 1995. A.E. was born November 28, 1995. Mother left with A.E. and moved to Pennsylvania in February 1996. Since that time, Father has seen A.E. on several occasions and has been paying installments on a retainer to an attorney to institute a proceeding to secure visitation and partial custody. Father testified, without contradiction, that CYSS had refused to reveal his child's whereabouts, and that Mother had prevented him from visiting with his daughter. Father testified that he presently resides with his parents and his girlfriend in Winchester, Virginia.
Following Father's testimony, and before Mother testified, counsel for CYSS told the court that, given Father's testimony, the agency believed there was a parent available, so no objection would be interposed to an order transferring custody to Father.
Mother testified that, on advice of her lawyer, she had refused to grant Father visitation. She stated that she based her refusal on information from her grandparents that some of Father's friends were telling the grandparents that Father was threatening to kidnap A.E. Mother testified that she intended to return from Philadelphia on January 4, 1998, but she had car problems at her aunt's house. She stated that she attempted to contact the baby-sitter by calling her collect, but the baby-sitter did not accept her collect calls. She testified that she tried, several times, to call her grandparents collect but they were not home. She denied telling anyone she was going to Atlantic City and denied having gone there on this trip. She testified that the baby-sitter was upset when she learned that Mother had tried, unsuccessfully, to call her collect the night before.
After the testimony of both Father and Mother, Judge Saxton placed legal and physical custody of the eleven-day old, R.N.Y., with CYSS pending a hearing, to be scheduled immediately. Judge Saxton declared that he found no prima facie evidence that A.E. did not have a parent capable of providing proper care, guidance and control. Judge Saxton directed CYSS to turn A.E. over to Father. Mother now appeals that portion of the order that placed custody of A.E. with Father.
Our scope of review in dependency cases is well settled:
The standard of review which this Court employs in cases of dependency is broad. However, the scope of our review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.
In Re B. B., 424 Pa.Super. 399, 622 A.2d 979, 982-83 (Pa.Super.1993) (citations omitted).
Our Court has recently stated:
A decision to remove a child from his or her parents' custody must be reconciled with the "paramount purpose" of preserving family unity.
The burden of proof in a dependency proceeding is on the petitioner ... who must show [that] the juvenile is without proper parental care, and that such care is not immediately available. A finding of dependency must be supported by clear and convincing evidence that proper parental care and control are not available. The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Without such evidence, *215 a child cannot be adjudged dependent and must be returned to his or her parent.
In Interest of J.M., 438 Pa.Super. 409, 652 A.2d 877, 880 (Pa.Super.1995) (citations and quotation marks omitted).
With this background, we turn to the issue raised on this appeal. In her Statement in Response to Order for Rule 1925(b) Statement, Mother avers:
4. In the context of a 72 Hour Shelter Care Hearing, the Court did not have a legal/factual basis to remove the child from its primary custodian, M.E., natural mother, with whom primary custody had been with [sic] since the date of the child's birth and place her with the natural father.
Judge Saxton has asserted that the reasons for the Order appealed from appear in the court's January 6, 1998 Order. The only support for the Order with regard to A.E. is contained in a single concluding sentence in that Order, declaring:
Regarding A.E., age two, the Court finds there is no prima facie evidence present that A.E. does not have a parent capable of providing proper parental care, guidance and control, and accordingly, the Agency is directed to turn the child over to the natural father, S.W.E.
Order, 1/6/98
We do not find this reason sufficient to sustain the removal of A.E. from Mother following an informal 72-hour hearing. During the informal hearing, counsel for Mother attempted to establish that Father had not brought any custody proceeding concerning A.E. N.T., 1/6/98, at 20. The transcript reveals the following:
BY MR. SMITH:
Q. Mr. E., have you filed any Custody Petitions either in Pennsylvania
THE COURT: No, we know that, Mr. Smith, now ask something we don't know.
Id. In interrupting counsel's line of questioning, the trial court appears to have placed little weight on the principle that a dependency proceeding under the Juvenile Act is not to be regarded as an alternative way for a non-custodial parent to seek custody of his or her children. In Interest of Theresa E., 287 Pa.Super. 162, 429 A.2d 1150, 1155 (Pa.Super.1981). This Court has stated strong disapproval of the use of a dependency proceeding as a means of transferring custody of a child from one parent to another. Helsel v. Blair County Children and Youth Services, 359 Pa.Super. 487, 519 A.2d 456, 460 (Pa.Super.1986); In the Matter of Mark T., 296 Pa.Super. 533, 442 A.2d 1179, 1182 (Pa.Super.1982) (Beck, J. concurring).
It is clear from the certified record that no finding of dependency was ever made with respect to A.E. However, a dependency determination is a prerequisite to a disposition of the custody issue. 42 Pa.C.S. § 6341(c); Helsel, supra, at 461. We have found no cases, nor have any of the appellees referred us to any, where the trial court is empowered to reach a conclusion regarding custody in the context of an 72-hour informal hearing pursuant to Section 6332(a).
Both CYSS and Father rely upon two cases to support their position that the trial court did not err in awarding custody to Father. Neither case is apposite on this appeal. In In the Matter of Mark T., supra, the trial court held a series of formal hearings, presumably pursuant to Section 6335, not 6332(a). At the conclusion of the disposition hearing, the court found the child dependent and awarded custody to the county children and youth social services agency without inquiring into the father's ability to provide proper parental care and control. Mother appealed. In vacating the order, this Court held that the trial court erred in failing to consider the second prong of the two-part analysis with respect to a finding of dependency: Is the child at this moment without proper parental care or control? Id. 442 A.2d at 1180.
In the same vein, In the Interest of Justin S., 375 Pa.Super. 88, 543 A.2d 1192 (Pa.Super.1988), presented the question whether a trial court can make a disposition altering an existing custody arrangement without first adjudging the children dependent. There, disposition hearings were held on August 5, 1986, and February 23, February 27, and March 26, 1987. Id. 543 A.2d at 1194-95. At each of these hearings, the court received evidence concerning father's alleged physical *216 and sexual abuse of different children. The court found as fact that all of the allegations against the father were unfounded and that mother was unable to provide proper parental care and control of her children. In affirming the trial court's disposition order that transferred custody from the mother to the father without a finding of dependency, we held that such action is appropriate "as long as sufficient evidence of dependency exists." Id. 543 A.2d at 1199. We went on to observe that a court cannot adjudge a child to be dependent when his non-custodial parent is ready, willing, and able to provide the child with proper parental care and control, especially where the child has been abused while under the custodial parent's care and control. Id.
Unlike the case now under review, both of those cases involved a court having to reach a determination of dependency following full hearings pursuant to Section 6335. In Mark T., we vacated and remanded for further proceedings where the trial court had adjudicated the child dependent but had failed to consider evidence regarding the availability and capacity of one of the parents before adjudicating the child dependent. In Justin S., we were able to affirm only after concluding that the evidence in the record was sufficient to support a finding of dependency. To the same effect, this Court affirmed an order that removed a toddler from the mother's home and placed it in the father's home without a finding of dependency. In Re B.B., 424 Pa.Super. 399, 622 A.2d 979 (Pa.Super.1993). There, the trial court held disposition hearings on three days, all parties were represented by counsel, and the court considered mother's petition for habeas corpus along with the dependency petition. The trial court expressly found that the evidence was clear and convincing that the mother had knowingly failed to protect the child from injuries inflicted by her paramour and failed to have the child treated for those injuries. Id. 622 A.2d at 982. Thus, the evidence was sufficient to support a finding of dependency, as required by Justin S.
The present appeal bears no resemblance to Justin S., Mark T., or In Re B.B. Whereas each of those cases involved a disposition hearing pursuant to Section 6335, the present case involves nothing more than a 72-hour, informal hearing held pursuant to Section 6332. As counsel for A.E. aptly points out, an informal hearing is just that  an informal attempt to determine whether shelter care continues to be appropriate pending a dependency hearing. It is not a substitute for a custody proceeding. The general rule is that disposition of custody in a dependency proceeding is improper where the record shows no finding of dependency was ever made. Helsel v. Blair County Children and Youth Services, supra. The facts of this case, involving an informal hearing, cannot bring it under the exception first articulated in Justin S., supra, and since followed in In Re B.B., supra.
Many years ago, this Court had occasion to remark upon the relationship between a mother and her child as follows:
The family is an institution which preceded governments. Its sanctity was universally recognized before judges or statutes or constitutions or welfare organizations were known to man. The right of a child to a mother and a mother to a child are rights created by natural law. They are rights attributable to the nature of mankind rather than enactments of law.
It is a serious matter for the long arm of the state to reach into a home and snatch a child from its mother. It is a power which a government dedicated to freedom for the individual should exercise with extreme care, and only where the evidence clearly establishes its necessity.
In Re Rinker, 180 Pa.Super. 143, 117 A.2d 780, 783 (Pa.Super.1955, Woodside, J.)
Here, the trial court did not expressly find that Mother had failed to provide proper parental care and control. The record does not appear to contain sufficient evidence to support such a finding even if made. We are constrained to conclude, therefore, that the court erred in awarding custody to Father, ex cathedra, rather than either (a) returning A.E. to Mother who already had custody, or (b) continuing shelter care provided by CYSS pending a dependency disposition hearing at which all matters could be fully developed.
*217 We reverse so much of the Order of January 6, 1998, filed January 8, 1998, as directed CYSS to turn A.E. over to the natural father, S.W.E. Order REVERSED. Case REMANDED for further proceedings consistent with this Opinion. Jurisdiction RELINQUISHED.